FILED
2024 Dec-02  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

KWANG YONG SHIN,         )
          )
    Plaintiff,         )
          )
v.          )    Case No. 5:24-cv-01229-HNJ
          )
AVIAGEN INC., *et al.*,         )
          )
    Defendants.         )

## OPINION AND ORDER

This case proceeds before the court on Defendants Aviagen, Inc., and Jan Henriksen's motion to dismiss. (Doc. 7). The court **GRANTS** the motion and **DISMISSES** claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e to 2000e-17) and the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621 to 634) **WITH PREJUDICE** because Plaintiff Kwang Yong Shin failed to adequately allege proper exhaustion of administrative remedies. Because this rationale stands sufficient, the court need not reach Defendants' additional alleged grounds for dismissal.

Regarding any potential claim under Section 1981 of the Civil Rights Act of 1866, the Complaint does not sufficiently allege Aviagen directly contracted with Shin or otherwise exercised control over the conditions of his employment. Therefore, the court **DISMISSES** any such claim **WITHOUT PREJUDICE**.

## BACKGROUND

On September 10, 2024, pro se plaintiff Kwang Yong Shin filed a complaint against Defendants Aviagen, Inc., and Jan Henriksen pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e to 2000e-17) and the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621 to 634). (Doc. 1 at 3). Sun Poultry Service, Inc., employed Shin as a skilled chick sexer. (*Id.* at 10 ("My last employment was with Sun Poultry Service, Inc., a subcontractor for major industry leaders such as Aviagen, Inc. and Cobb-Vantress, Inc., both of which are globally recognized companies dominating the U.S. poultry sector.")). Shin worked at an Aviagen-affiliated hatchery from October 2018 to October 2021. (*Id.*). From October 2021 to May 2024, he worked at a hatchery unaffiliated with Aviagen. (*Id.*).

Shin alleges Aviagen tacitly permitted Sun Poultry Service to dismiss American citizens of Korean descent and hire younger undocumented workers to whom it could pay lower wages. (*Id.* at 12). To this end, Shin claims Aviagen allowed Sun Poultry Service to create fraudulent social security numbers for undocumented workers, deduct substantial fees from undocumented workers' wages, and operate without retaining I-9 forms. (*Id.* at 13). Shin claims such conditions created an environment of constant stress and fear of termination. (*Id.* at 12, 16).

On September 29, 2023, Shin filed a lawsuit against Sun Poultry Service in the Northern District of Georgia. ECF No. 1:23-cv-04439-MHC. On May 30, 2024, Sun Poultry Service terminated Shin and replaced him with "an illegal worker from Mexico

2

who crossed the border to join the workforce." (*Id.* at 15; *see also id.* at 10 ("Unfortunately, I was wrongfully terminated from this position after filing a lawsuit against [Sun Poultry Service] for violations related to its practices.")). Shin alleges the afore-described events produced extreme emotional distress for him and his immediate family. (*Id.* at 16).

On September 11, 2024, the court ordered Shin to file a copy of his EEOC charge and Notice of Right to Sue Letter on or before September 25, 2024. (Doc. 5). To date, Shin has filed no such documents.

On October 4, 2024, Defendants Aviagen, Inc., and Jan Hendriksen filed a motion to dismiss. (Doc. 7). Defendants argue (1) Shin failed to exhaust his administrative remedies under Title VII and the ADEA, (2) Shin did not serve as an employee of Aviagen when Sun Poultry Service terminated his employment, and (3) Shin otherwise failed to allege plausible allegations for which this court could grant relief.

On October 15, 2024, Shin filed a response to Defendants' motion. (Doc. 15). Pertinently, Shin declared "[he] made an error when submitting [his] complaint and did not file" the requisite EEOC documents. (*Id.* at 2). Shin did not subsequently attempt to correct the deficiency. Moreover, Shin remarked "Aviagen may not be responsible for this specific case since Cobb-Vantress was the contractor at the time" of his termination. (*Id.*).

## ANALYSIS

Federal Rule of Civil Procedure 8, governing pleading, calls for a short and plain statement of a claim, which, if established, entitles the pleader to relief. *See Dees v. Lamar*, No. 2:20-cv-1326-LSC-GMB, 2020 WL 13750276, at *2 (N.D. Ala. Nov. 30, 2020) (noting Rule 8(a)(1) requires a plaintiff to "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests"). Relatedly, Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*,

556 U.S. at 678.  Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense."  *Id.* at 678, 679 (citations omitted).  The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability."  *Id.* at 678, 679 (citations omitted).

While the court should extend *pro se* complaints some measure of leniency, *see Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002), "nothing in that leniency would excuse a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure."  *Johnson v. Mobile County Sheriff Dept.*, No. 06-0821-WS-B, 2007 WL 2023488, at *3 (S.D. Ala. July 9, 2007) (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural rules."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure")).

Prior to filing a Title VII action, a plaintiff first must file a timely charge of discrimination with the Equal Employment Opportunity Commission.  *Gregory v. Georgia Dept. of Human* Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)); *Bost v. Fed. Express Corp.,* 372 F.3d 1233, 1238 (11th Cir. 2004) (stating exhaustion requirement also applies to judicial

claims under the ADEA). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).

In addition, this court's Standing Order for Cases that Involve EEOC Charges requires a Title VII plaintiff to file a copy of all charges of discrimination filed with the EEOC which form the bases of the action, as well as a copy of the EEOC's response to all such charges of discrimination filed with the agency, including the Notice of Right to Sue Letter.

"[A] plaintiff must generally allege in [her] complaint that all conditions precedent to the institution of the lawsuit have been fulfilled." *Burnett v. City of Jacksonville*, 376 Fed. App'x 905, 906-907 (11th Cir. 2010) (quoting *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982) (citing Fed. R. Civ. P. 9(c)) (internal quotation marks omitted) (second alteration in original). "The filing of a complaint with the EEOC is a condition precedent to a … suit" brought under Title VII. *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1223 (11th Cir. 2010) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)).

Shin did not indicate in his Complaint whether the Equal Opportunity Commission issued him a Notice of Right to Sue Letter. (Doc. 1 at 7). Nor did Shin file a Notice of Right to Sue Letter by the deadline set by this court. (Doc. 5). In fact,

Shin explicitly acknowledged his failure to file proper EEOC documents.  (Doc. 15 at 2).  Consequently, Shin cannot sustain claims premised on violations of Title VII and the ADEA.  Accordingly, the court **DISMISSES** Shin's claims against Aviagen and Hendrickson under Title VII and the ADEA **WITH PREJUDICE**.[1]

Shin does not explicitly invoke Section 1981 of the Civil Rights Act of 1866 in

---

[1] Generally, a plaintiff's failure to plead a condition precedent would warrant dismissal *without* prejudice.  *See, e.g., Quintanilla v. Lexington Insurance Company,* CASE NO. 22-23206-CIV-COHN/TORRES, 2023 WL 11799722, at *6 (S.D. Fla. May 19, 2023) (finding "no triable issue as to Plaintiffs' failure to meet the condition precedent to suit of providing compliant documents and information" and dismissing case without prejudice); *Morrison v. Brennen,* Case No. 8:17-cv-2850-T-60AEP, 2019 WL 5722122, at *3 (M.D. Fla. Nov. 5, 2019) (dismissing amended complaint without prejudice because "Plaintiff [did] not allege that the conditions precedent to the initiation of [his] employment discrimination lawsuit [had] been fulfilled").

In the present case, however, Shin cannot correct the exhaustion deficiencies in his Complaint because any charges or claims against Aviagen stand time-barred.  The State of Alabama does not sustain state or local agencies with "authority to grant or seek relief from [an unlawful employment] practice or to institute criminal proceedings with respect thereto upon receiving notice thereof"; hence, a plaintiff must file a charge of discrimination with the EEOC within 180 days of an alleged violation.  42 U.S.C. § 2000e-5(e)(1); *see also* 29 U.S.C. §633a(d); *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1241 n. 2, 1220 (11th Cir. 2001).  Moreover, a plaintiff must file suit under Title VII in federal court within 90 days of receiving a Right to Sue Letter from the EEOC.  *Green v. Union Foundry Co.*, 281 F.3d 1229 (11th Cir. 2002) (citing 42 U.S.C. § 2000e–5(f)(1) (1994)).  Similarly, the ADEA requires a plaintiff to file a complaint within 90 days of receipt of a right-to-sue letter.  29 U.S.C. § 626(e); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

According to the Complaint, Shin worked at Hubbard, LLC—a hatchery operated by Aviagen, Inc.—from October 2018 to October 2021.  (Doc. 1 at 10).  He worked at a hatchery unaffiliated with Aviagen from October 2021 to May 2024.  (*Id.*).  Shin alleges he was terminated from his employment on May, 30, 2024.  (*Id.* at 15).  As an initial matter, Shin cannot bring a claim against Aviagen for wrongful termination, as he acknowledges Aviagen did not bear responsibility for that adverse action.  (Doc. 15 at 2 ("I acknowledge that Aviagen may not be responsible for this specific case since Cobb-Vantress was the contractor at the time.")).  Moreover, the applicable deadlines regarding any other claims of Title VII or ADEA discrimination against Aviagen have lapsed, as Shin ceased working at Hubbard/Aviagen in 2021.  Thus, "[n]o purpose would be served by dismissing [this case] without prejudice, [as its] untimely filing under [Title VII] clearly means [Plaintiff's] claims are barred and must be dismissed with prejudice." *Benton v. BP Exploration & Production, Inc.*, CIVIL ACTION NO. 19-9987, 2019 WL 3937665, at *7 (E.D. La. July 15, 2019); *see also Abram-Adams v. Citigroup, Inc.,* 491 F. App'x 972, 974 (11th Cir. 2012) (affirming district court's dismissal with prejudice of time-barred claim).

his Complaint. However, "[t]he [c]ourt must construe [Shin's] pro se Complaint liberally, without regard to the specific labels [Shin] has given his claims." *Wade v. Electromet Corp.*, CIVIL NO. JKB-21-1133, 2022 WL 2003309, at *4 (D. Md. June 6, 2022); *see also Hairston v. DVA Reg'l VA off. Martinsburg*, 841 F. App'x 565, 568 (4th Cir. 2021) ("It is well-established that pro se complaints are to be construed liberally, interpreted to 'raise the strongest arguments that they suggest.'" (citing *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020)).

Title 42 U.S.C. § 1981 provides,

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Given the substantial overlap between Title VII and § 1981, the court construes Shin's Complaint to aver a potential § 1981 discrimination claim. *See King v. Butts County Ga.*, 576 Fed. App'x 923 (11th Cir. 2014) (finding plaintiff "gave [the defendant] fair and sufficient notice of the nature of and grounds for his § 1983 claims of discrimination and retaliation such that he may proceed under § 1983," where plaintiff did not explicitly invoke § 1983 and instead mistakenly cited § 1981); *Brown v. Dep't of Health & Mental Hygiene*, 7 F.3d 222 (Table), 1993 WL 359466, at *1 (4th Cir. 1993) (remanding where the district court "construed [plaintiff's] pro se complaint only to raise claims under §§ 1983, 1985, 1988, the Fifth and Fourteenth Amendments, and Maryland tort law"

where "[plaintiff] also raised claims under Title VII and § 1981 [because] the gist of [plaintiff's] concerns involved employment discrimination, *i.e.,* allegations of a wrongful discharge based on racial discrimination"); *Holmes v. Burris Liquor Stores, Inc.*, Civ. No. 13-1866-DCN-BHH, 2014 WL 468930, at *4 (D.S.C. Feb. 4, 2014), *afff'd sub nom. Holmes v. Burris Liquor Store, Inc.*, 573 F. App'x 253 (4th Cir. 2014) ("[T]he Court is likely obligated to consider the plaintiff's Complaint as having implicated 42 U.S.C. § 1981…. Indeed, Title VII and Section 1981 claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).") (citations omitted).

The applicable statute of limitations for § 1981 retaliation, wrongful-termination, or hostile-work-environment claims arise under 28 U.S.C. § 1658's 4-year statute of limitations for causes of action "arising under an Act of Congress enacted after [December 1, 1990]."[2]  Unlike Shin's Title VII and ADEA claims, then, no timeliness concerns mar Shin's ability to plead a violation of § 1981.  However, under the standards

---

[2] Prior to the Civil Rights Act of 1991, the Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 had held racial harassment relating to an employee's conditions of employment did not give rise to an actionable claim under § 1981.  The 1991 Act overturned *Patterson* by reframing the "make and enforce contracts" language in the statute to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (stating that plaintiffs' "hostile work environment, wrongful termination, and failure to transfer claims 'arose under' the 1991 Act in the sense that petitioners' causes of action were made possible by that Act").  Claims arising under the amended version of § 1981 fall under § 1658's limitations period because "a cause of action 'arises under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Id.* at 382.

set forth in Federal Rule 12(b)(6), the Complaint does not plead the existence of a contractual relationship between Shin and Aviagen sufficient to generate liability under § 1981. The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

As an initial matter, Shin acknowledges he worked at a hatchery unaffiliated with Aviagen when Sun Poultry Service terminated him. (*See* doc. 1 at 10; doc. 15 at 2 ("Aviagen may not be responsible for this specific case since Cobb-Vantress was the contractor at the time.")). As such, any wrongful termination or retaliation claims against Aviagen stand unsupported in that regard.

To the extent Shin attempts to lodge a hostile work environment claim based on race or alienage discrimination,[3] the Complaint does not sufficiently allege Aviagen

---

[3] Although Shin specifies his Korean/Asian descent in the Complaint, the thrust of Shin's grievances appear to depend more heavily on his status as an American citizen. (*See, e.g.,* doc. 1 at 12 ("Korean-American citizens, including myself, have had to work under constant stress. As the number of illegal workers has grown, they have formed powerful, unified groups, with many holding supervisory and managerial roles despite lacking legal status. This shift has left American citizens working under the direction of illegal workers, whose influence now outweighs that of U.S. citizens.")).

To this end, there exists a split between circuits regarding whether § 1981 recognizes a claim of reverse discrimination based on American citizenship. *Compare Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731 (5th Cir. 1986) ("Discrimination against whites is racial discrimination, but (in America) discrimination against Americans can never be discrimination based on *alienage*") *and Tomason v. Stanley*,

contracted directly with Shin or otherwise exercised control over the conditions of his employment.[4]  In contrast with Title VII, § 1981 covers all aspects of discrimination in contracting—not just employment.   However, Shin alleges no facts indicating he enjoyed any contractual relationship—employment or otherwise—with Aviagen, despite the existence of an alleged contractor/subcontractor relationship between Aviagen and Sun Poultry Service.

Nor does Shin allege Aviagen shared joint control with Sun Poultry Service over the conditions of his employment.  "If one employer while contracting in good faith with an otherwise independent company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer, that defendant may be liable as a joint-employer under Title VII, § 1981, or

---

No. 6:13–CV–42, 2013 WL 5652040, at *4 (S.D. Ga. Oct. 16, 2013) ("Although § 1981 permits claims of alienage discrimination … and claims of reverse discrimination against whites …, it does not permit claims of reverse alienage discrimination of the type Plaintiffs have pled." (citations omitted)), *with Rajaram v. Meta Platforms*, 105 F.4th 1179 (9th Cir. 2024) ("The disputed question is whether section 1981 prohibits employers from discriminating against United States citizens.  The statutory text answers that question in the affirmative.  An employer that discriminates against United States citizens gives one class of people—noncitizens, or perhaps some subset of noncitizens—a greater right to make contracts than 'white citizens.'  If some noncitizens have a greater right to make contracts than 'white citizens,' then it is not true that '[a]ll persons' have the 'same right' to make contracts as 'white citizens.'  That is precisely what the literal text of the statute prohibits."); *but c.f., Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("If respondent can prove he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981.").  However, because Shin does not plead the existence of a contractual relationship with Aviagen, the court need not decide whether § 1981 protects American citizens from discrimination.

[4] "To establish a hostile work environment claim under § 1981, an employee (or former employee) must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [his or her] employment.'" *Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009) (quoting *Pa. State Police v. Saunders*, 542 U.S. 129 (2004)).  Because Shin has not alleged a joint employment relationship exists between Shin and Aviagen, the court need not assess that claim.

11

the Age Discrimination in Employment Act (ADEA)." *Hendon v. Kentek, Inc.,* 117 F. Supp. 3d 1325 (N.D. Ala. 2015); *see also Perrymond v. Lockheed Martin Corp.,* 2009 WL 2474226 (N.D. Ga. Aug. 12, 2009) (citing *Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1341 (11th Cir. 1999)).  The Eleventh Circuit indicates a joint employer analysis should focus on "'the degree of control an entity has over the adverse employment decision on which the Title VII [or § 1981] suit is based.'" *Phillips v. Board of Trustees of the Univ. of Ala.,* 218 F. Supp. 3d 1297, 1307 (N.D. Ala. 2016) (quoting *Llampallas v. Mini-Circuits, Lab, Inc.,,* 163 F.3d 1236, 1244-45 (11th Cir. 1998)).

Shin alleges Aviagen "tacit[ly] approv[ed]" of Sun Poultry Service's unlawful practices (doc. 1 at 12, 13), "quietly allowed" them to continue (*id.* at 12), and "failed to provide oversight" (*id.* at 14).  Such allegations indicate Aviagen did not directly participate in any alleged adverse employment action.  *See Jerome v. Herz Corp.*, 15 F. Supp. 3d 1225, 1232 (M.D. Fla. 2014) ("Since liability under Section 1981 is premised on personal involvement of a defendant it cannot be imposed vicariously." (citing *Cason Enter., Inc. v. Metro. Dade County*, 20 F. Supp. 2d 1331, 1337 (S.D.Fla.1998))); *id.* at 1234 ("There is no record evidence that Hertz intentionally discriminated against Plaintiffs because of their race. In fact, the record evidence demonstrates Hertz was unaware of who Plaintiffs were and Hertz had no control over All Alliance's employment practices. Therefore, Hertz had no control over Plaintiffs. The record evidence also reveals Hertz had no control over Advantage's employment practices, but instead Advantage's employment practices were independent from Hertz. This is true despite Hertz owning

Advantage. There was no active personal involvement of Hertz here."); *Isaacs v. Felder Servs., LLC,* No. 2:13-CV-693-MEF, 2014 WL 2806128, at \*1-3 (M.D. Ala. June 20, 2014) (declining to find joint employment where plaintiff worked "on site and under the supervision of management" at a rehab center but claim hinged upon a later retaliatory termination by primary employer acting alone); *Woldu v. Hotel Equities, Inc.,* No. 1:09-CV-0685-HTW-CCH, 2009 WL 10668443, at \*13 (N.D. Ga. Sept. 18, 2009), *report and recommendation adopted,* 2010 WL 11507854 (N.D. Ga. Mar. 18, 2010) (declining to find joint employment where purported joint employer "kept files; prepared payroll; administered tests; advised on complaints, and [only] participated in the decision to terminate Plaintiff and the execution of that decision"); *Lopez v. Assurance Quality Grp., Inc.,* No. 3:13-CV-077-TCB-RGV, 2013 WL 12090613, at \*1, 3-6 (N.D. Ga. Nov. 8, 2013), *report and recommendation adopted,* 2013 WL 12091211 (N.D. Ga. Dec. 10, 2013) (finding "[m]ere allegations of 'mutually convenient arrangements' and 'arms-length' contractual relations between entities" insufficient to establish joint employer status where temporary staffing company employee alleged joint employer relationship with client to whom she was assigned).

Shin's Complaint alleges only that Sun Poultry Service contracted with Aviagen to supply Aviagen-affiliated hatcheries with chick sexing services. However, such facts stand insufficient to state a claim of direct discrimination against Shin under § 1981. Therefore, the court **DISMISSES** any § 1981 claim against Aviagen and Henriksen **WITHOUT PREJUDICE.**

**DONE** and **ORDERED** this 2nd day of December, 2024.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE